# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JULIO MENDOZA,**<br><br>        **Plaintiff,**<br><br>        **v.**<br><br>**DEPARTMENT OF HOMELAND SECURITY, UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, ALEJANDRO MAYORKAS, Secretary Of U.S. Department of Homeland Security, TRACY RENAUD, Acting Director of U.S. Citizenship and Immigration Services, UNITED STATES DEPARTMENT OF STATE, ANTONY BLINKEN, U.S. Secretary of State,**<br>        **Defendants.** | Civ. No. 21-10413 (KM)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

     Julio Mendoza was born in the Dominican Republic and immigrated to the United States with his father as a teenager. He seeks a declaration that he is a citizen of the United States. Defendants move to dismiss arguing that this court lacks subject matter jurisdiction because the claims are time-barred. (DE 17.)[1] For the reasons set forth below, the motion is **GRANTED**.

## I.    BACKGROUND

     Plaintiff Julio Mendoza's parents were married but divorced prior to his birth. (Compl. ¶ 18.) Julio Mendoza was born in the Dominican Republic on December 23, 1977. (*Id.* ¶ 3.) He immigrated to the United States as a lawful

---

[1]     Certain citations to the record are abbreviated as follows:

     DE = docket entry in this case

     Compl. = Complaint (DE 1)

permanent resident with his father in March 1985, at the age of 7. (*Id.*) While in the United States, he claims, he resided solely with his father. (*Id.* ¶ 18.) His mother separately immigrated to the United States at some point. (*Id.* ¶ 3.) His father became an American citizen on July 7, 1995 when plaintiff was 17 years of age. (*Id.* ¶ 3.) His mother became an American citizen on April 3, 1996, when plaintiff was 18 years of age. (*Id.*) Plaintiff argues that because his father became a citizen when he was a minor, he automatically acquired derivative United States citizenship on July 7, 1995. (*Id.* ¶ 17.)

Mendoza first attempted to obtain proof of citizenship in 2007 when he applied for a passport, which was issued on April 16, 2008. (*Id.* ¶ 13.) He also filed Form N-600 to obtain a Certificate of Citizenship, but that application was denied on May 27, 2009. (*Id.*) Mendoza appealed the denial, but it was upheld on September 27, 2011. (*Id.* ¶ 14.) In addition, Mendoza's passport was revoked on August 31, 2010. (DE 17 at 12.) On November 5, 2015, he filed a motion to reopen the 2011 decision. (Compl. ¶ 15.) That motion was finally denied on January 4, 2022. (DE 21, Ex. A.) In 2019, Mendoza applied to renew his passport, but his application was denied on March 5, 2020. (Compl. ¶ 16.) Mendoza was placed in deportation proceedings in 2013 and 2016 and was ordered removed on August 3, 2016. (*Id.* ¶ 4.) In 2020, he filed a separate federal case with an erroneous cause of action, which was dismissed. (DE 18 at 9–10.)

Mendoza filed this case on April 30, 2021. (DE 1.) Defendants moved jointly to dismiss the complaint on December 20, 2021. (DE 17.) Plaintiff filed a brief in opposition (DE 18) and defendants filed a reply (DE 21). The motion is fully briefed and ripe for decision.

## II.   STANDARD OF REVIEW

Jurisdiction must be established as a threshold matter. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). Motions to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) may be raised at any time. *Iwanowa v. Ford Motor Co.,* 67 F. Supp. 2d 424, 437-38 (D.N.J.

1999). "[B]ecause subject matter jurisdiction is non-waivable, courts have an independent obligation to satisfy themselves of jurisdiction if it is in doubt. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 278, 97 S. Ct. 568, 50 L.Ed.2d 471 (1977). A necessary corollary is that the court can raise sua sponte subject-matter jurisdiction concerns." *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76–77 (3d Cir. 2003).

A motion to dismiss pursuant to Rule 12(b)(1) may be brought as a facial or factual challenge. *See Church of the Universal Bhd. v. Farmington Twp. Supervisors*, 296 F. App'x 285, 288 (3d Cir. 2008). Where the motion challenges jurisdiction on the face of the complaint, the court only considers the allegations of the complaint and documents referred to therein, construed in the light most favorable to the plaintiff. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). By contrast, where the existence of subject matter jurisdiction is challenged factually, "no presumptive truthfulness attaches to the plaintiff's allegations," and the court may consider evidence outside the pleadings to satisfy itself of its power to hear the case. *Id.* In such a case, "Rule 12(b)(1) does not provide plaintiffs the procedural safeguards of Rule 12(b)(6), such as assuming the truth of the plaintiff's allegations." *CNA v. United States*, 535 F.3d 132, 144 (3d Cir. 2008).

## III.    DISCUSSION

Plaintiff suggests several important issues related to citizenship, immigration, parentage, and gender discrimination that are worthy of analysis in light of the Supreme Court's decision in *Sessions v. Morales-Santana*, 137 S. Ct. 1678 (2017). This case, however, is not an appropriate vehicle for such an analysis, because Mendoza brought his claims long after the expiration of the jurisdictional statute of limitations of 8 U.S.C. § 1503(a).

Mendoza claims that he obtained derivative citizenship because his father was naturalized in 1995, when Mendoza was 17 years of age. In 1995, the Immigration and Nationality Act was in force and derivative citizenship was

governed by 8 U.S.C. § 1432. That statute allowed for a child born outside of the United States to non-citizen parents to automatically obtain citizenship upon the fulfillment of the following conditions:

> (1) The naturalization of both parents; or (2) The naturalization of the surviving parent if one of the parents is deceased; or (3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; and if (4) Such naturalization takes place while such child is unmarried and under the age of eighteen years; and (5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized under clause (1) of this subsection, or the parent naturalized under clause (2) or (3) of this subsection, or thereafter begins to reside permanently in the United States while under the age of eighteen years.

8 U.S.C. § 1432(a). Here, Mendoza claims that his citizenship was acquired under 8 U.S.C. § 1432(a)(3), because his parents had legally separated, and he was in the legal custody of his father in 1995 when his father became a citizen.[2]

Mendoza seeks a declaration of citizenship under 8 U.S.C. § 1503(a), which states in relevant part

> If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action under the provisions of section 2201 of title 28 against the head of such department or independent agency for a judgment declaring him to be a national of the United States…. An action under this subsection may be instituted *only within five years after the final administrative denial* of such right or privilege and shall be filed in the district court of the United States for the district in which such person resides or claims a residence, and jurisdiction over such officials in such cases is conferred upon those courts.

---

[2]     The wrinkle here is that Mendoza's parents divorced *before* his birth. I do not reach this novel issue, however, because I find that Mendoza's claims are untimely.

8 U.S.C. § 1503(a) (emphasis added). The plain text of this statute requires me to answer two questions. First, I must determine when the "final administrative denial" of Mendoza's citizenship application occurred. Second, if that final administrative denial occurred more than five years before this case was filed, I must determine whether the statute of limitations may be equitably tolled. Following other courts that have examined the question, I find that the statute of limitations clock begins to run upon the *first* final administrative denial of a plaintiff's citizenship application, *i.e.,* the 2011 denial of Mendoza's appeal of the denial of his N-600 certificate of citizenship.[3] I also find that the statute of limitations of 8 U.S.C. § 1503(a) is jurisdictional and that equitable tolling is not available.

Pinpointing the "final administrative denial" is particularly important because it is a prerequisite to seeking a declaratory judgment of citizenship in a federal court, and because it triggers the limitations period. *United States v. Breyer*, 41 F.3d 884, 892 (3d Cir. 1994) ("a federal district court does not have jurisdiction to declare citizenship absent exhaustion of an applicant's administrative remedies"); *see also Phuong Thanh Nguyen v. Kirby*, No. CIV.A. 10-4525, 2010 WL 3862368, at *5 (D.N.J. Sept. 24, 2010). Courts in this district have held that administrative remedies are exhausted when an applicant's appeal is denied by the Administrative Appeals Unit of U.S. Citizenship and Immigration Services. *See, e.g., Charles v. Samuels*, No. CIV 07-1368 RMB, 2007 WL 1674595, at *2 (D.N.J. June 8, 2007); *Todd-Murgas v. Samuels*, No. CIV. 07-1644 (NLH), 2007 WL 1202726, at *2 (D.N.J. Apr. 19, 2007); *Kajtazi v. I.N.S.*, No. CIV.A. 02-124, 2005 WL 2621971, at *5 (D.N.J.

---

[3]    I address, *infra,* the contention, raised only glancingly by Mendoza, that his 2020 passport application denial and/or the filing of a second N-600 in 2015, which was denied only in 2022, restarted the statute of limitations.

Oct. 14, 2005).[4] It follows that only the denial of the administrative appeal starts the statute of limitations clock.

Mendoza's appeal was denied on September 27, 2011. (Compl. ¶ 14.) This case was filed on April 30, 2021, well outside the five-year statute of limitations under 8 U.S.C. § 1503(a). Mendoza's claim, filed almost ten years after September 27, 2011, is clearly untimely.

Mendoza offers two arguments in response. First, he argues that the statute of limitations should be tolled based on ineffective assistance of counsel. (DE 18 at 8.) He also argues, less directly, that the statute of limitations should be calculated from the 2020 passport denial, rather than from the 2011 appeal denial. (*Id.* at 6–7.)

If the statute of limitations in 8 U.S.C. § 1503(a) is a jurisdictional requirement, then equitable tolling would not apply. The Fifth Circuit has stated, albeit briefly, that the statute of limitations is a "jurisdictional requirement." *Gonzalez v. Limon*, 926 F.3d 186, 188 (5th Cir. 2019); *see also Del Angel Cardona v. Mayorkas*, No. 1:20-CV-132, 2021 WL 5242972, at *3 (S.D. Tex. May 27, 2021), *report and recommendation adopted sub nom. Cardona v. Mayorkas*, No. 1:20-CV-00132, 2021 WL 4059719 (S.D. Tex. Sept. 7, 2021). I nevertheless consider the question afresh, because the Third Circuit has not explicitly decided whether the statute of limitations in 8 U.S.C. § 1503(a) is jurisdictional.

The final sentence of 8 U.S.C. § 1503(a) fairly explicitly says that the five-year limit is both strict and jurisdictional: "An action under this subsection may be instituted only within five years after the final administrative denial of such right or privilege and shall be filed in the district court of the United States for the district in which such person resides or claims a residence, and

---

[4]     Courts have explicitly rejected the assertion that the denial of a motion to reopen, rather than the initial denial of an appeal, is the final administrative denial. See, e.g., *Gonzalez v. Limon*, 926 F.3d 186, 189 (5th Cir. 2019); *Heuer v. U.S. Sec'y of State*, 20 F.3d 424, 426–27 (11th Cir. 1994) (per curiam); *Icaza v. Shultz*, 656 F. Supp. 819, 821–23 (D.D.C. 1987).

*jurisdiction over such officials in such cases is conferred upon those courts.*" 8 U.S.C. § 1503(a) (emphasis added). Thus the statute confers declaratory jurisdiction upon federal courts only when two conditions are met: 1) the action is instituted "only within five years after the final administrative denial" and 2) the action is filed "in the district court of the United States for the district in which such person resides or claims a residence." *Id.* If these two conditions are not met, a federal court lacks jurisdiction to issue a declaration of citizenship in favor of a plaintiff. What is more, the statute's addition of the word "only" ("only within five years"), unless disregarded as meaningless, must be read to underscore Congress's intent to strictly bar claims made outside of the five-year window.

In general, judicial review provisions "are jurisdictional in nature and must be construed with strict fidelity to their terms." *Stone v. I.N.S.*, 514 U.S. 386, 405 (1995). Now it is also true that, in general, there is a rebuttable presumption that equitable tolling applies in suits against the United States; but "Congress, of course, may provide otherwise if it wishes to do so." *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990) Here, Congress has stated clearly that the five-year statute of limitations is jurisdictional. Equitable tolling is therefore unavailable.

Mendoza's second argument is based on new evidence uncovered after the first, 2011 denial of his appeal. That new evidence, he says, justifies treatment of the second, 2020 appeal denial as a new "final administrative denial" that restarts the statute of limitations clock.

Denial of a second application and appeal, following denial of an initial application and appeal, may raise complex issues. On the one hand, to press the reset button simply because a person has filed a second, duplicative application risks paralysis of the administrative process, and would run counter to the Congressional preference for finality expressed in 8 U.S.C. § 1503(a). On the other hand, citizenship is a vitally important right, and an overly strict rule disfavoring successive applications might leave an applicant

in limbo, in possession of convincing proof of citizenship but unable to access the courts.

Recognizing this dilemma, the Fifth Circuit adopted a compromise rule that allows applicants to restart the 8 U.S.C. § 1503(a) statute of limitations clock under limited circumstances. *Gonzalez*, 926 F.3d at 189. The United States District Court for the Southern District of Texas has helpfully summarized the *Gonzalez* rule as follows: "if a court finds (1) a qualitative difference in a subsequent application process, and (2) allowing the plaintiff to proceed would agree with Congress' desire for finality, the plaintiff may proceed with a § 1503(a) challenge." *Villarreal Salinas v. Limon*, 549 F. Supp. 3d 624, 630 (S.D. Tex. 2021) (citing *Gonzalez*, 926 F.3d at 189). The mere discovery of some new evidence, however, may not suffice; such new evidence must be strong enough to render a subsequent application "qualitatively different" from its processor. *Gonzalez*, 926 F.3d at 189 (quoting *Henry v. Quarantillo*, 684 F. Supp. 2d 298 (E.D.N.Y. 2010), *aff'd*, 414 F. App'x 363 (2d Cir. 2011)).

*Villarreal Salinas* is illustrative. There, the plaintiff, whose passport applications had several times been declined, was detained at a port of entry and placed in removal proceedings as an arriving alien. *Villarreal Salinas*, 549 F. Supp. 3d at 626–27. She successfully opposed removal, proving to the satisfaction of the immigration judge that she had obtained citizenship by being born in the United States. *Id.* Thereafter, however, plaintiff applied again for a passport and her application was again denied. *Id.* She then sued in district court. The court found that her suit was not barred by the statute of limitations, which would be deemed to run from that most recent passport denial. Her most recent passport application, the court held, was "qualitatively different" from her previous applications because this time, she had come armed with an immigration judge's ruling that she was a U.S. citizen. Thus, the *Villareal* court held, the most recent denial was qualitatively distinct from the earlier denial(s), and the statute of limitations should be calculated from the most recent denial. *Id.* at 628; *see also Vasquez v. Pompeo*, 467 F. Supp. 3d

466, 473 (S.D. Tex. 2020) (stating that in a case where a passport denial was followed by passport approval and then subsequently was denied a second time, the statute of limitations clock should start from the second denial because the approval mooted the first denial.) Moreover, the court reasoned, if the plaintiff were barred from proceeding, she would be stuck in "limbo," deemed a citizen for purposes of barring deportation, but deemed *not* a citizen for purposes of the passport application. Thus, strict application of the statute of limitations' one-bite rule, the court observed, would actually backfire and undermine the statute's goal of finality. *Id.* at 630.

The *Villareal* approach, I find, successfully balances the competing factors. I agree that it is possible for a subsequent application to be "qualitatively different" if the applicant locates in the interim significant evidence (or, *a fortiori,* an administrative ruling) that compels a finding of citizenship.

Here, however, Mendoza has not met that burden. His additional evidence consists solely of a short letter from the principal of a Bronx school, stating that Mendoza was a student there in 1985 and that he was in the custody of his father at that point. (Compl., Ex. F.) Mendoza's paternal custody in 1985, however, is in no way dispositive. Mendoza's father became a United States citizen a decade later, in 1995, when Mendoza was 17. Only if his father had legal custody of him at that time could Mendoza potentially claim derivative citizenship. *See* 8 U.S.C. § 1432(a)(3). Mendoza's new evidence, dating from 1985, is too far removed from the issue of custody in 1995 to render his second citizenship application "qualitatively different" from his first, rejected application.[5]

---

[5]     Mendoza brought this new evidence to USCIS both by filing a new N-600 application and by moving to reopen his previous rejection. Those claims were consolidated and rejected by USCIS earlier this year. (DE 21, Ex. A.)

9

## IV.    CONCLUSION

This case was filed in 2021, well outside of the five-year statute of limitations period, which began to run on September 27, 2011. For the reasons set forth above, defendants' motion to dismiss (DE 17) is **GRANTED**. A separate order will issue.

Dated: May 27, 2021

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty**
**United States District Judge**